# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MICRO FOCUS (US), INC.,

        Plaintiff,

    v.

EXPERITEST LTD.,

        Defendant.

Civil Action No. 16-cv-6901

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

Plaintiff Micro Focus (US), Inc. ("Micro Focus") brings this action for damages and declaratory relief against Defendant Experitest Ltd. ("Experitest") and alleges as follows:

### THE PARTIES

1.      Micro Focus is a Delaware corporation with its principal place of business at 700 King Farm Blvd., Suite 400, Rockville, Maryland 20850.

2.      Upon information and belief, Experitest is an Israeli corporation with its principal place of business at 10 HaGavish St., 4250413 Poleg, Israel.

### JURISDICTION

3.      Experitest consented to the jurisdiction of this Court under the terms of the Parties' Software OEM/VAR Agreement dated February 21, 2012 (the "Agreement"). Under the terms of the Agreement, Experitest and Micro Focus agreed that "any action brought hereunder shall be brought exclusively in the State and Federal courts applicable to New York City." A true and correct copy of the Agreement is attached hereto as <u>Exhibit A</u>.

4.      Upon information and belief, Experitest is doing business in the State of New York, including in this Judicial District. Experitest is the provider of tools for mobile test

automation, manual testing and monitoring, supporting all mobile operating systems including: iOS, Android, Windows/Microsoft, and Blackberry.  Experitest markets, sells, and services these products to customers within New York City including the New York Stock Exchange.

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a).

6.    Venue is proper in this Judicial District pursuant to 28 U.S.C.  § 1391.

7.    This Court has personal jurisdiction over Micro Focus and Experitest pursuant to N.Y.C.P.L.R. § 301, *et seq.*

## BACKGROUND

### The Software OEM/VAR Agreement

8.    Micro Focus is a global software company engaged in delivering and supporting enterprise software solutions that help customers build, operate, and modernize their IT systems.

9.    Experitest is the provider of Quality Assurance tools for mobile DevOps, including test automation, manual testing, performance testing, load testing and monitoring for mobile applications.

10.    One of Experitest's products is SeeTestAutomation, a test automation tool for mobile applications on iOS, Android, Blackberry and Windows/Microsoft devices.

11.    On February 21, 2012, Micro Focus and Experitest entered into a Software OEM/VAR Agreement, whereby Micro Focus entered into a sales and marketing relationship with Experitest authorizing Micro Focus to resell a private label version of SeeTestAutomation under the name "Silk Mobile."

12.    Under the terms of the Agreement, Experitest was required to rebrand SeeTestAutomation as "Silk Mobile" utilizing the name, icons, web support information, and other materials provided by Micro Focus.

13.     In addition, Experitest was required to provide Micro Focus and its customers with support and maintenance functions as described in Exhibit C of the Agreement (hereinafter the "support and maintenance services"). These support and maintenance services include, but are not limited to: accepting forwarded calls for support from Micro Focus customers, correcting program errors within the Application, and providing "online access to Experitest's knowledge base and internal bug tracking systems to track bugs identified and reported by Micro Focus to Experitest."

14.     The original term of the Agreement was for five years beginning February 21, 2012. On June 14, 2016, the Parties entered into an Amendment that extended its terms to December 31, 2018. A true and correct copy of the Amendment is attached hereto as Exhibit B.

15.     The Agreement contains common termination powers. Each party is able to terminate for convenience provided proper notice is given. *See* Section 10.3 of Exhibit A.

16.     Either party may terminate the Agreement by written notice to the other party if the other party fails to perform or observe any of its material obligations under the Agreement and such failure is not cured within thirty days after written notice is provided to the breaching party. *See* Section 10.2 of Exhibit A.

17.     If Experitest chooses to exercise its right to terminate the agreement for an uncured material breach, Experitest agreed to permit Micro Focus a twelve month wind down period from the date of termination, during which time Micro Focus could continue to market and distribute Silk Mobile. All licenses granted under the Agreement would remain in effect until the end of the wind down period. *See* Section 10.4.4 of Exhibit A.

18.     Further, the Agreement requires Experitest to provide the support and maintenance services during the life of the agreement and for twelve months after the agreement

expires or is terminated, regardless of the reason for the termination. *See* Section 10.4.5 of Exhibit A.

### Experitest's Improper Termination of the Agreement

19.     The Parties have maintained a mutually beneficial relationship during the term of the agreement. During the life of the agreement, Micro Focus continued to market and sell Silk Mobile, resulting in payments to Experitest valued at approximately $2.4 million dollars.

20.     On August 2, 2016, Experitest sent a letter to Micro Focus stating that Experitest was terminating the Agreement effective immediately. A true and correct copy of the Letter is attached hereto as Exhibit C.

21.     The August 2nd letter claims the basis for termination was late payment of invoices over the prior twelve months. Experitest did not provide Micro Focus with its contractually obligated thirty day opportunity to cure and instead claimed the termination was immediate.

22.     Upon information and belief, Experitest's actual reason for terminating the Agreement are Experitest's concerns that Micro Focus is developing a competing product to Experitest, which is not a proper basis for termination.

23.     Micro Focus explicitly informed Experitest that Micro Focus would be introducing its own product to the market. On April 25, 2016, Stuart McGill (CTO) and Archie Roboostof (Product Director, SD&T Portfolio) of Micro Focus met with Experitest CEO Tal Barmeir in London to discuss the current state of the partnership and a proposed amendment to the Agreement.

24.     During the London meeting, Micro Focus told Experitest that Micro Focus would be introducing a native version of Silk Mobile called Silk Test.

25.     At the same time, Micro Focus informed Experitest that it wished to continue to sell Experitest products even after the launch of its new product and explained that Micro Focus planned to sell even more of Experitest's product, now titled Silk Mobile EE, in Micro Focus' Asian markets because Silk Test would be new and less sophisticated than Silk Mobile EE.

26.     Experitest did not object to Micro Focus' plans to launch Silk Test. Instead, Experitest continued to operate under the standard contract and, two months later, signed the amendment extending the Agreement and offering Micro Focus more products to sell.

27.     Even after Micro Focus introduced its own mobile automation tool, a component within the Silk Test product, Micro Focus continued to perform under the Agreement, including the marketing and sale of Experitest products.

28.     Even if Experitest believed that Micro Focus had materially breached the Agreement, Experitest was required to provide written notice of the breach and allow Micro Focus thirty days to cure the defect. Upon information and belief, Experitest ignored its clear contractual obligations because all alleged breaches had previously been cured.

**Micro Focus' Timely Payments**

29.     Micro Focus complied with all terms in the Agreement. Experitest routinely overcharged Micro Focus and submitted several incorrect invoices that the Parties were required to correct prior to payment. Micro Focus communicated these errors to Experitest and explained that Micro Focus needed time to verify the invoices. Experitest did not object to Micro Focus' request to verify the invoices.

30.     Once the disputes were resolved and Experitest corrected any errors contained in its invoices, Micro Focus paid the corrected invoices as required under the Agreement.

31.     Any delay in payments was caused by Experitest's failure to issue correct invoices.

32.     Micro Focus has paid all of the outstanding invoices Experitest issued.

**Experitest's Breach has Damaged Micro Focus**

33.     Despite Micro Focus making all its payments required under the Agreement, Experitest has stopped performing under the Agreement, including refusing to provide support to existing customers and denying Micro Focus access to Experitest's knowledge base, and refusing to activate new licenses validly sold pursuant to the terms of the Agreement.

34.     Experitest's failure to perform under the Agreement has caused and continues to cause significant damage to Micro Focus. Micro Focus customers have paid for licenses that Micro Focus cannot activate due to Experitest's failure to perform.

35.     Other Micro Focus customers have reported issues with Silk Mobile that Micro Focus cannot address because Experitest has refused to provide the requisite support and access to Experitest's online knowledge base, which are necessary to correct the issues.

36.     Prior to Experitest's breach, Micro Focus sold long-term perpetual licenses with maintenance to some of its customers, in which Micro Focus charges its customers maintenance fees. Experitest's refusal to provide the support and maintenance services required under the Agreement prevents Micro Focus from fulfilling its maintenance obligations under the long-term perpetual licensing agreements.

37.     Micro Focus is subject to penalties and potential loss of contracts caused by Experitest's failure to perform under the Agreement.

38.     Every day that Experitest fails to perform under the Agreement, Experitest causes Micro Focus significant economic and reputational damage, which could quickly exceed one million dollars.

## COUNT I

## BREACH OF CONTRACT

39.     The allegations in paragraphs 1-38 are realleged and incorporated herein by reference.

40.     Micro Focus and Experitest entered into a contract on February 21, 2012.  The Agreement was later amended effective April 1, 2016.

41.     The Agreement was supported by adequate consideration.  Under the Agreement, Micro Focus paid subscription fees to Experitest in exchange for the right to market and resell SeeTestAutomation as Silk Mobile.  Micro Focus and its customers also received support and maintenance services under the Agreement.

42.     Micro Focus performed under the terms of the Agreement.  Micro Focus provided all of the necessary materials to rebrand SeeTestAutomation as Silk Mobile.  Further, Micro Focus has paid all of the fees required under the Agreement.

43.     Experitest materially breached the Agreement by wrongfully terminating the Agreement without the requisite notice and cure period and by Experitest's continued failure to perform under the terms of the Agreement.

44.     Even if Experitest could terminate the Agreement properly, Experitest materially breached the Agreement by failing to continue to provide the support and maintenance services as required under Section 10.4.5 of the Agreement.

45.     Even if Experitest could terminate the Agreement properly, Experitest materially breached the Agreement by not providing Micro Focus with the twelve month wind down period

whereby Micro Focus could continue to market and distribute Silk Mobile. Experitest's failure to perform under the Agreement prevents Micro Focus from activating new customers as agreed to under the Agreement. *See* Section 10.4.4 of Exhibit A.

46. Experitest's material breach has caused and continues to cause Micro Focus damage, including:

(a) Experitest's failure to provide a twelve month wind down period prevents Micro Focus from activating its new customers, preventing Micro Focus from receiving payments under those contracts.

(b) Experitest's failure to provide the support and maintenance services required under the Agreement subjects Micro Focus to penalties under Micro Focus' agreements with its customers because Micro Focus cannot provide its customers the support necessary to service Silk Mobile.

(c) Each day Micro Focus cannot activate Silk Mobile for its new customers and provide the necessary support and maintenance services to its existing customers causes Micro Focus significant reputational damages, preventing Micro Focus from growing its business.

## COUNT II

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

47. The allegations in paragraphs 1-38 are realleged and incorporated herein by reference.

48. Micro Focus and Experitest entered into a contract on February 21, 2012. The Agreement was later amended effective April 1, 2016.

49. By entering into the Agreement, Micro Focus and Experitest owed each other an implied duty of good faith and fair dealing.

50.    Experitest entered into the Agreement with knowledge that Micro Focus planned to introduce its own product to the market.  Experitest had no objection to Micro Focus's plans to develop and sell Silk Test with native mobile testing capabilities.

51.    Experitest acted in bad faith when it terminated the Agreement effective immediately, in violation of Sections 10.2 and 10.3 of the Agreement.

52.    Upon information and belief, Experitest knew that Micro Focus was not in material breach, but claimed that Micro Focus breached the Agreement so that Experitest would not be subject to the one hundred and eighty day termination for convenience period.

53.     Experitest caused Micro Focus' delays in payment by routinely overcharging Micro Focus and submitting incorrect invoices that the Parties were required to correct prior to payment.  Experitest now attempts to claim these delays were material breaches to wrongfully terminate the agreement.

54.    Experitest knew that Micro Focus relied on the activation services and support and maintenance services provided by Experitest in order to meet its obligations to its new and existing customers.

55.    Experitest wrongfully terminated the agreement to hinder Micro Focus's business and damage its new product launch.

56.    Experitest's bad faith termination of the contract has caused and continues to cause Micro Focus damage, including:

(a)    Experitest's failure to provide a twelve month wind down period prevents Micro Focus from activating its new customers, preventing Micro Focus from receiving payments under those contracts.

(b)     Experitest's failure to provide the support and maintenance services required under the Agreement subjects Micro Focus to penalties under Micro Focus' agreements with its customers because Micro Focus cannot provide its customers the support necessary to service Silk Mobile.

(c)     Each day Micro Focus cannot activate Silk Mobile for its new customers and provide the necessary support and maintenance services to its existing customers causes Micro Focus significant reputational damages, preventing Micro Focus from growing its business.

## COUNT III

## TORTIOUS INTERFERENCE OF CONTRACT

57.     The allegations in paragraphs 1-38 are realleged and incorporated herein by reference.

58.     Micro Focus has entered into a number of licensing agreements with its customers.  Under the licensing agreement, Micro Focus' customers were authorized to use Silk Mobile upon payment of a licensing fee.  Under the terms of the licensing agreement, Micro Focus was required to provide support functions to its customers to ensure that Silk Mobile was performing correctly.

59.     Experitest knew that Micro Focus had entered into these licensing agreements. The primary purpose of the Agreement between Experitest and Micro Focus was to enable Micro Focus to market and sell SeeTestAutomation to Micro Focus' end customers under the name Silk Mobile.

60.     Experitest wrongfully terminated all services to Micro Focus required under the Agreement.

61.     Experitest's failure to perform under the Agreement prevents Micro Focus from meeting its contractual obligations to its end customers, including barring Micro Focus from activating its new customers and providing support and maintenance services for existing customers.

62.     Experitest's failure to perform intentionally and improperly threatens Micro Focus' breach of its licensing agreements with its customers.

63.     Experitest's tortious interference with Micro Focus' end-user customer contracts has caused and continues to cause Micro Focus damage, including:

(a)     Micro Focus' inability to activate its new customers, preventing Micro Focus from receiving payments under those contracts.

(b)     Micro Focus' inability to provide its customers the support necessary to service Silk Mobile as required under the licensing agreement, subjecting Micro Focus to contract penalties.

## COUNT IV

## DECLARATORY JUDGMENT

64.     The allegations in paragraphs 1-38 are realleged and incorporated herein by reference.

65.     Micro Focus and Experitest entered into a contract on February 21, 2012. The Agreement was later amended effective April 1, 2016.

66.     Micro Focus provided the necessary materials to Experitest to rebrand SeeTestAutomation as Silk Mobile.

67.     Micro Focus complied with all terms in the Agreement.

68.     Experitest routinely overcharged Micro Focus and submitted several incorrect invoices that the Parties were required to correct prior to payment.  Micro Focus communicated these errors to Experitest and explained that Micro Focus needed time to verify the invoices.

69.     Once the invoices were corrected or the disputes were resolved, Micro Focus paid the corrected invoices as required under the Agreement.

70.     Any delay in payments was caused by Experitest's failure to issue correct invoices and not be a willful or material breach on the part of Micro Focus.

71.     An actual, justiciable controversy exists between the parties concerning whether Micro Focus materially breached the contract and failed to cure the breach within the time required under the agreement.

72.     An actual, justiciable controversy exists between the parties concerning whether Experitest's termination of the Agreement pursuant to Section 10.2.

73.     Micro Focus is entitled to the issuance of a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C.  §§ 2201 and 2202 declaring and adjudging that: (1) Micro Focus has not materially breached the Agreement and that (2) Experitest's attempt to terminate the Agreement on August 2, 2016 is unlawful.

WHEREFORE, Plaintiffs demands judgment against Defendants as follows:

(a)     declaring that (1) Micro Focus has not materially breached the Agreement and that (2) Experitest's attempt to terminate the Agreement on August 2, 2016 is unlawful;

(b)     awarding Plaintiff damages or other monetary relief s this Court deems just and proper;

(c)    awarding Plaintiff any further and additional relief as this Court deems just and proper.

Dated:    September 1, 2016

Respectfully submitted,

Plaintiff Micro Focus (US), Inc.

By their attorneys,

Hugh Marbury
DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Tel.: 410.580.4205
Fax: 410.580.3205
E-mail: hugh.marbury@dlapiper.com

Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
United States
Tel.: 212.335.4768
Fax: 212.884.8468
E-mail: spencer.stiefel@dlapiper.com

*Counsel for Micro Focus*

## VERIFICATION

COMMONWEALTH OF MARYLAND:     )

COUNTY OF MONTGOMERY:     )

Archie Roboostoff, being duly sworn, deposes and says:

I am the Product Director, SD&T Portfolio of Micro Focus (US) Inc., the Plaintiff in the above-entitled action. I have read the foregoing Verified Complaint and know the contents thereof, which are true to my own knowledge, except those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____

Archie Roboostoff

Sworn to before me this

_____ day of September 2016

_____

Notary Public

EXPS 9/25/2021
Oakland County

KELLY JO SATTERFIELD
Notary Public - Michigan
Oakland County
My Commission Expires Sep. 25, 2021
Acting in the County of Oakland

# Exhibit A

# SOFTWARE OEM/VAR AGREEMENT

This non-exclusive Software OEM/VAR Agreement (together with all exhibits and attachments, the "Agreement") is entered into as of February 21, 2012 ("Effective Date") by and between Micro Focus (US), Inc. ("Micro Focus"), a Delaware corporation doing business at 700 King Farm Blvd., Suite 400, Rockville, Maryland 20850, and Experitest Ltd. ("Experitest"), an Israeli corporation.

## RECITALS

WHEREAS, Experitest is the owner of a software product known as SeeTestMobile;

WHEREAS, Micro Focus wishes to enter into a sales and marketing relationship with Experitest under which Micro Focus may resell a private label version of SeeTestMobile; and

WHEREAS, the parties wish to enter into such relationship pursuant to the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement and any exhibits attached hereto and incorporated herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

## 1. Definitions.

1.1. Application: The private labeled version of SeeTestMobile for all Platforms for which it is made generally available by Experitest and bearing the Marks of Micro Focus and/or it affiliates as further described in Exhibit A to this Agreement, including any documentation attendant thereto, and any Updates and/or Successor Products thereto.

1.2 Catastrophic Failure: Any circumstance where an End-User is unable to use the Application.

1.3. End-User: A third party licensing the Application for internal use and not for remarketing, resale, or re-distribution. End-Users do not include Experitest.

1.4. EULA: A software license agreement between Micro Focus and End-User granting the End-User a limited use license in the Application.

1.5. Intellectual Property Rights: Patent rights (including but not limited to rights in patent applications or disclosures and rights of priority), copyright rights (including but not limited to rights in audiovisual works and moral rights), trademark rights, trade secret rights, and any other intellectual property rights recognized by the law of each applicable jurisdiction.

1.6. Level 1 Support: The service provided in response to the initial phone call by an End-User, which identifies and documents an error in the Application. This includes problem source identification assistance, problem analysis, problem resolution, installation support, and preventive and corrective service information.

1.7. Level 2 Support: The service provided to analyze or repeat the error, or to determine that the error is not repeatable. This includes repeating the problem and in-depth technical analysis to determine if it is an Application error.

1.8. Level 3 Support: The service provided to isolate the error to a component level of the Application. An attempt is to be made to provide an error correction or circumvention or to provide notification that no correction or circumvention is available.

1.9. Marks: Logos, trademarks, trade names, and/or service names or marks.

1.10 Platform: A hardware chipset (e.g., PA-RISC, Itanium, x86, SPARC) and operating system (e.g., Windows, Linux, Solaris, AIX, HP-UX) combination.

1.11 SeeTestMobile. The most current generally available version of SeeTestMobile for each Platform for which a version is generally available, including any Updates and/or Successor Products thereto.

1.12 Successor Product. Any product that: (i) includes substantially similar functionality to an existing product; (ii) represents a performance or other enhancement to substantially similar functionality offered in an existing product; (iii) offers substantially similar functionality to an existing product for different operating system software and/or technology platforms; (iv) is written in a different development language but includes substantially similar functionality to an existing product; or (v) offers substantially similar functionality to an existing product but that is translated into or supports additional natural languages.

1.13 Territory: Worldwide.



1.14 Update: A revision of the Application that contains (i) maintenance releases, corrections, minor enhancements, or improvements of the software functionality, usually designated by a change in the number to the right of the decimal point (e.g., from Version 5.3 to 5.4 or from Version 5.3.1 to 5.3.2) or the addition of a service pack number (e.g., V3.1 SP1); (ii) new or improved functionality within the same product line, usually designated by a change in the number to the left of the decimal point (e.g., from Version 5.4 to 6); or (iii) to support an update or revisions to the same operating system (e.g. Windows 95 to Windows 98).

## 2. Licenses and Grants.

2.1. During the term of this Agreement, Experitest grants Micro Focus and its affiliates (under any and all Intellectual Property Rights owned or licensed by Experitest) a worldwide, perpetual, irrevocable, license and right to:

(a) copy, reproduce, market, distribute and sublicense the Application to End-Users; and

(b) copy, reproduce, and use the Application and SeeTestMobile (including any Intellectual Property Rights therein) for internal evaluation, demonstration, and testing purposes, and in order to provide Level 1 Support to End-Users. Such right shall also apply to Micro Focus' third party contractors and agents.

Upon the Effective Date and during the term of this Agreement, or otherwise as set forth in Exhibit A, Experitest will provide Micro Focus with copies of the Application and SeeTestMobile reasonably necessary for Micro Focus to enjoy the foregoing rights.

2.2. The distribution rights granted hereunder shall be limited to the Territory. Micro Focus may distribute the Application as permitted hereunder through any means or method, including electronically or physically, and through distributors in the Territory at any level of distribution.

2.3. Micro Focus will independently establish prices for the Application and related support and maintenance fees.

2.4. Any distribution and sublicense of the Application shall be done under a EULA, a copy of which shall be provided to Experitest upon request.

2.5. In the event that an End-User has a Catastrophic Failure, Micro Focus may provide additional copies of the Application to the End-User so affected without an obligation to pay Experitest, provided that the Application is being provided at no charge (other than normal shipping and handling).

2.6 Experitest shall have no right to use or distribute the Application other than as set forth in Exhibit A.

2.7 Within thirty (30) days of the Effective Date, Experitest shall name Micro Focus, at Experitest's expense, as a beneficiary under a software escrow agreement with an escrow agent reasonably acceptable to Micro Focus. Per such agreement, the escrow provider shall release the Source Code to Micro Focus and Micro Focus shall have the right to obtain Source Code directly from Experitest, if one of the following events occurs: (a) if, at any time during the term of the Agreement, Experitest fails to provide support and maintenance services as set forth in Section 4 to Micro Focus for any reason other than Micro Focus's failure to timely remit payment under this Agreement; or (b) bankruptcy, receivership, insolvency, reorganization, dissolution, liquidation, or similar proceedings are commenced by or against Experitest. Source Code shall mean one complete copy of the source code of the then current version of the Application (and of the 2 prior versions if requested by Micro Focus), along with all documentation necessary for the use of such source code. If received, Micro Focus may only use such Source Code as reasonably necessary to exercise its rights under the Agreement. The parties intend that no bankruptcy or bankruptcy proceeding, petition, law, or regulation (and no other proceeding, petition, law, or regulation of a similar nature in any state or foreign jurisdiction) will impede, delay, or prevent the release of Source Code to Micro Focus in accordance with the provisions of this Agreement; and Experitest hereby conveys to the escrow agent such rights (including intellectual property rights) as are necessary to allow the escrow agent to lawfully make such release.

## 3. Payment.

3.1. Micro Focus agrees to pay to Experitest on a quarterly basis within forty-five (45) days after the end of each calendar quarter, the license fees and/or royalties (the "Fees") provided for in Exhibit B in respect of Application licenses sold by Micro Focus during such quarter. Micro Focus shall provide quarterly reports that provide the basis for such payments. Any information identifying Micro Focus' customers or their contact information shall be deemed to be Micro Focus' Confidential Information. Experitest will use such information solely for the purpose of satisfying itself that Micro Focus has met its payment obligations. The amount of the Fees will be computed in the manner set forth in Exhibit B. All payments will be in U.S. dollars. Except as specifically set forth in this Agreement, Experitest shall not be entitled to any other fees or payments from Micro Focus or any End-User in respect of the Application distributed or licensed hereunder.

3.2. If any authority imposes a duty, tax, levy, or fee (excluding those based on Experitest's net income) upon the Application distributed by Micro Focus under this Agreement, then Micro Focus agrees to pay that amount or supply exemption documentation.

4.   **Support.**  Micro Focus will provide Level 1 Support to End-Users. During the term of this Agreement, Experitest will be responsible for Level 2 Support and Level 3 Support and will provide the support and maintenance services described in Exhibit C.

5.   **Confidentiality.** Each party agrees that it will not disclose Confidential Information to any third party except as expressly permitted in this Agreement, and that it will take all reasonable measures to maintain the confidentiality of all Confidential Information of the other party in its possession or control, which will in no event be less than the measures it uses to maintain the confidentiality of its own information of similar importance.  "Confidential Information" means business or technical information, including this Agreement, which reasonably appears to be proprietary or confidential in nature because of legends or other markings, the circumstances of disclosure, or the nature of the information itself.

   5.1. Exceptions. "Confidential Information" will not include information that:

      5.1.1. is in or enters the public domain without breach of this Agreement;

      5.1.2. information that the receiving party lawfully receives from a third party without restriction on disclosure and without breach of a nondisclosure obligation; or

      5.1.3. which a party develops independently without breach of this Section, which it can prove by the preponderance of the written evidence.

   5.2. Injunctive Relief. Each party acknowledges that all of the disclosing party's Confidential Information is owned solely by such disclosing party (or its licensors) and that the unauthorized disclosure or use of such Confidential Information would cause irreparable harm and significant injury, the degree of which may be difficult to ascertain. Accordingly, each party agrees that the disclosing party will have the right to seek an immediate injunctive relief enjoining any breach of this Agreement, as well as the right to pursue any and all other rights and remedies available at law or equity for such a breach.

6.   **Proprietary Rights.**  Subject to the rights granted to Micro Focus in this Agreement, all right, title, and interest, including all Intellectual Property Rights, in and to the Application and any derivative works thereof, including code, sequence, logic, structure and screens, and documentation, including concepts and technology inherent in the Application, are, and at all times shall remain, the sole and exclusive property of Experitest and its suppliers, if any, whether the Application is separate or combined with any other products, and are copyrighted and licensed, not sold. Notwithstanding the foregoing, the Marks and other Intellectual Property Rights in anything provided by Micro Focus to Experitest in connection with Exhibit A or otherwise under this Agreement, and any derivative works thereof, are, and at all times shall remain, the sole and exclusive property of Micro Focus and its suppliers, if any. Nothing contained in this Agreement shall be construed directly or indirectly to assign or grant to either party any right, title, or interest in or to the Intellectual Property Rights of the other party.

7.   **Representations and Warranties.**

   7.1 Non-Infringement. Experitest represents and warrants to Micro Focus that SeeTestMobile and/or the Application as delivered by Experitest does not and will not infringe any Intellectual Property Rights of any third party.

   7.2 Performance. Experitest represents and warrants to Micro Focus that the Application as delivered by Experitest will perform in material accordance with its applicable documentation for a period of ninety (90) days from the date of delivery to an End-User. Should the Application fail to meet this warranty and Micro Focus provides written notification of such failure to Experitest within such ninety (90) day period, Experitest will promptly modify, repair or replace the defective Application to conform to this warranty at no additional charge to Micro Focus. If Experitest cannot perform any of the foregoing in a commercially reasonable timeframe, Experitest shall refund to Micro Focus all fees paid to Experitest by Micro Focus with respect to the Application. The foregoing represent Micro Focus' sole and exclusive remedies and Experitest's sole and exclusive liabilities for any breach of this representation and warranty.

   7.3 No Viruses. Experitest represents and warrants to Micro Focus that the Application as delivered by Experitest shall not contain any viruses, worms, Trojan horses or other malicious or destructive code ("Malicious Code"). Without limiting the foregoing, should the Application contain any Malicious Code as delivered by Experitest, Experitest shall provide Micro Focus with a clean copy that does not contain such Malicious Code within fifteen (15) days following Micro Focus' written notice to Experitest of a breach of this warranty.

   7.4 Open Source. Experitest warrants to Micro Focus that the Application does not include any software licensed to Experitest under a license, including but not limited to the GNU General Public License (GPL) or the GNU Lesser GPL, under which the distribution of the Application as authorized under this Agreement would have the effect of imposing any restriction or duty upon Micro Focus, including a restriction on Micro Focus' right to license any Micro Focus product or a duty to distribute source to a Micro Focus product, except as expressly set forth in this Agreement.

   7.5 Authority. Each Party warrants to the other party that it has all necessary rights, power and authority to enter into this Agreement and to grant the rights granted by such party under this Agreement.

7.6 DISCLAIMER. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE AGREEMENT, EXPERITEST DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8. Indemnities.

8.1. Subject to compliance with Section 8.2, if a third party claims that the Application and/or SeeTestMobile as delivered by Experitest infringes any Intellectual Property Rights, Experitest will indemnify, defend, and hold harmless Micro Focus against any such claims at Experitest's expense. In addition, if an infringement claim appears likely or is made, Micro Focus will let Experitest, a) modify or replace the applicable software, or b) procure for Micro Focus the past and future right to exercise its license under this Agreement; provided, if neither of these alternatives are available at reasonable expense or in a reasonable timeframe, Experitest may terminate this Agreement and refund to Micro Focus all fees paid under this Agreement.

8.2. The indemnifying party will have no obligation under this Section 8 if the other party fails to: (i) promptly provide the indemnifying party with written notice of the applicable claim and the indemnifying party is materially prejudiced as a result of such failure, and (ii) provide reasonable cooperation and allow the indemnifying party to control, at the indemnifying party's expense, the defense of the claim and settlement negotiations provided that no rights of the indemnified party may be compromised by the indemnifying party without the indemnified party's prior written consent. The other party may participate in the proceedings at its option and expense.

9. Limitations of Liability.

9.1. Except for Experitest's indemnity obligations, a breach of warranty by Experitest, and/or a breach by either party of Section 5, the aggregate liability of either party for any losses or damages arising out of or in connection with this Agreement, whether the claim is in contract or otherwise, shall not exceed the amounts paid by Micro Focus to Experitest in the six (6) months immediately preceding the claim.

9.2. Except for a breach by either party of Section 5, neither party will be liable for any special, incidental, or indirect damages or for any consequential damages (including lost profits, loss of data or savings), even if it has been advised of the possibility of such damages.

9.3. The parties have agreed that the limitations specified in this Section will survive and apply even if any limited remedy specified in this Agreement is found to have failed its essential purpose. This Section shall not apply to the extent prohibited by law.

10. Term and Termination.

10.1. This Agreement shall remain in effect for five (5) years following the Effective Date unless terminated earlier in accordance with the provisions hereof. The parties may renew the term as mutually agreed in writing.

10.2. Either party may terminate this Agreement by written notice to the other party if the other party fails to perform or observe any of its material obligations under this Agreement and such failure is not cured within thirty (30) days after written notice thereof from the terminating party.

10.3. Micro Focus may terminate this Agreement at any time upon the provision of ninety (90) days prior written notice to Experitest. Experitest may terminate this Agreement at any time upon the provision of one hundred eighty (180) days prior written notice to Micro Focus provided Experitest has completed all rebranding efforts for the Application set forth in Exhibit A.

10.4. Upon termination or expiration:

10.4.1. Micro Focus shall immediately: (a) cease all marketing and distribution of the Application; and (b)(i) cease all use of the Application and SeeTestMobile, and (ii) destroy all copies of the Application and SeeTestMobile in Micro Focus' possession or under Micro Focus' control. Notwithstanding the foregoing, Micro Focus is permitted to maintain a limited license to use the Application and SeeTestMobile for the sole and exclusive purpose of fulfilling any pre-existing contractual obligations for maintenance and support services of the Application to its End Users.

10.4.2. Micro Focus shall pay Experitest all amounts due or becoming due on or before the effective date of such termination or expiration.

10.4.3. Previously granted paid-up licenses to End-Users or any licenses granted to Micro Focus under any other agreements are unaffected.

10.4.4. Notwithstanding the foregoing, in the event of termination in the case of an uncured material breach by Experitest, Experitest agrees to permit Micro Focus a period of twelve (12) months ("Wind-Down Period") from the date of termination to continue to market and distribute the Application. Until the expiration of the Wind-Down Period, all licenses granted under this Agreement will remain in effect, subject to payment under Section 3.

10.4.5. Experitest's support and maintenance obligations under this Agreement shall continue for at least twelve (12) months following termination or expiration of the term or Wind-Down Period as applicable.



10.5. No Damages for Termination. NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR DAMAGES OF ANY KIND ON ACCOUNT OF THE EXPIRATION OR TERMINATION OF THE AGREEMENT IN ACCORDANCE WITH ITS TERMS AND CONDITIONS.

10.6. Nonexclusive Remedy. The exercise by either party of any remedy under this Agreement will be without prejudice to its other remedies under this Agreement or otherwise, except as otherwise expressly set forth in this Agreement. Either Party can pursue its remedies under this Agreement, whether at law or in equity, including without limitation suing for damages and injunctive relief, and all other remedies available under copyright, patent, trademark, trade secret, and other applicable laws and administrative regulations.

10.7 Bankruptcy. All rights and licenses granted under or pursuant to this Agreement by Experitest to Micro Focus are, and shall otherwise be deemed to be, for the purposes of Section 365(n) of the United States Bankruptcy Code (the "Bankruptcy Code"), licenses to rights in "intellectual property" as defined under Section 101 (35A) of the Bankruptcy Code. As licensee of such rights under this Agreement, Micro Focus shall retain and may fully exercise all of its rights and elections under the Bankruptcy Code. Upon the event of the commencement of bankruptcy proceedings by or against Experitest under the Bankruptcy Code, Micro Focus shall be entitled to retain all of its rights under this Agreement (including the license rights).

10.7. Survival. The rights and obligations of the parties contained in Sections 5, 6, 7, 8, 9, 11, 13, 14, 16, 17, and other sections that by their nature are intended to survive, will survive the termination or expiration of this Agreement.

11. Relationship. Each party is an independent contractor. Neither party is, nor will claim to be, a legal representative, franchisee, agent, or employee of the other, except as specifically stated in this Agreement. Neither party will assume or create obligations for the other. Except as expressly set forth herein or after the prior written consent of the other, neither party hereto shall: (i) refer to itself as an authorized representative of the other party hereto in promotional, advertising, or other materials; (ii) use the other party's Marks or any variations thereof in any of its promotional, advertising, or other materials; or (iii) release any public announcements referring to the other party in connection with this Agreement.

12. Compliance with Law. Each party agrees to comply with all applicable laws, rules, and regulations, including all export laws and regulations of the United States, as such laws and regulations may exist from time to time in connection with its activities under this Agreement. Experitest will provide Micro Focus with the Export Control Classification Number (or successor designation) ("ECCN") for the Application in writing, as such ECCN is determined by Experitest or the Bureau of Industry and Security (or a successor agency) ("BIS"), as applicable. Experitest will cooperate with Micro Focus by sharing with Micro Focus any license or other written authorization to export the Application that has been provided by the BIS or the National Security Agency.

13. Governing Law. This Agreement will be governed by and construed in accordance with the laws of New York without regard to any conflict of laws provisions. The "United Nations Convention on International Sale of Goods" and UCITA do not apply. Any action brought hereunder shall be brought exclusively in the State and Federal courts applicable to New York City.

14. Severability. If any provision of this Agreement is found invalid or unenforceable, that provision will be enforced to the maximum extent permissible, and the other provisions of this Agreement will remain in force.

15. Assignment. This Agreement will bind and inure to the benefit of each party's permitted successors and assigns; provided, however, that Experitest may not assign this Agreement, in whole or in part, whether by operation of law or otherwise, without Micro Focus' written consent.

16. Force Majeure. Neither party will be responsible for any failure to perform due to causes beyond its reasonable control.

17. Other. This Agreement constitutes the entire agreement between the parties, and no representation, condition, understanding or agreement of any kind, oral or written, shall be binding upon the parties unless incorporated herein. This Agreement may not be modified or amended, nor will the rights of either party be deemed waived, except by an agreement in writing signed by authorized representatives of both parties. This Agreement is an agreement between the Parties. No provisions of this Agreement are intended nor shall be interpreted to provide or create any third party beneficiary rights or any other rights of any kind in any other party. All notices under this Agreement shall be in writing and either delivered personally, sent by first class mail, or express courier to the address set forth on page 1 of this Agreement.

IN WITNESS WHEREOF, Micro Focus and Experitest have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

Experitest Ltd.

By: _____

Name: __TAL BARMEIR__

Title: __CEO__

Date: __22.02.2012__

Facsimile: __TAL@EXPERITEST.COM__

Micro Focus (US), Inc.

By: _____

Name: __Courtney L. Wood__

Title: __Senior Corporate Counsel__

Date: __February 28, 2012__

# EXHIBIT A

## A. Brief Project Description

Project Title: SeeTestMobile rebrand to Silk Mobile

This project is intended to give Micro Focus a product to take to the mobile test automation market. Experitest will rebrand all aspects of SeeTestMobile for Micro Focus as set forth herein.

## B. Scope of Work

Build product and collateral for Micro Focus to sell a mobile test automation solution which is the culmination of the rebranded SeeTestMobile product.

## C. Responsibilities

The responsibilities of Experitest shall include, but are not limited to:

1. Rebrand of SeeTestMobile (including naming conventions, product name, splash screen, application icons, EULA, documentation, web support materials, training materials) into Silk Mobile based on materials supplied by Micro Focus and other requirements communicated to Experitest by Micro Focus

2. Completion of the rebranding and delivery (release) of the rebranded product (Silk Mobile) and all other deliverables set forth below to Micro Focus by March 1, 2012

3. Deliver training materials and an onsite 3-day training course (in up to 2 different locations) for Micro Focus subject matter experts – date to be coordinated

4. Experitest shall incorporate any updates made to SeeTestMobile during the term of the Agreement into Silk Mobile promptly after such updates are made generally available and deliver to Micro Focus such updated version of Silk Mobile promptly thereafter

The responsibilities of Micro Focus shall include:

1. Provide marketing rebrand collateral support as reasonably needed.

2. Provide all graphics, templates, logos, brand names as needed.

3. Provide any Micro Focus software dependencies which are required for the rebrand.

## D. Deliverables

The key deliverables from Experitest will be the following:

1. Silk Mobile binaries, which will be an application packaged in either zip, self install, jar, or whatever Experitest uses

2. Unaltered SeeTestMobile binary – 1 seat license – to be used for support comparisons and isolating root causes of issues

3. Release notes for Silk Mobile

4. Documentation for Silk Mobile

## E. Planned Resources

Experitest Project Manager – Tal Barmeir

Micro Focus Product Management - Archie Roboostoff

Micro Focus Project Management - Clinton Sprauve

Micro Focus Product Development - Mark Conway

## F. Fee, Payment and Invoicing

Experitest may invoice Micro Focus in the amount of US$55,000 plus training-related Travel & Accommodation upon signature of this agreement with payment terms 50% upfront and remaining 50% upon delivery of all deliverables set forth above. Such amount shall be inclusive of all applicable taxes.

Definitions: Seat license – node-locked to a specific station

## Application (Silk Mobile) Pricing Structure

| | iOS or Any two of Android, Windows, Symbian, Blackberry, or HTML5 as long as the two are not from the same OS (e.g. the bundle cannot include two Androids). | Each Additional OS (including iOS) |
|---|---|---|
| 1-5 seats | $2,499/year/seat | $2,000/year/seat |
| 6-10 seats | $2,149/year/seat | $1,700/year/seat |
| 11-19 seats | $1,848/year/seat | $1,400/year/seat |
| 20-29 seats | $1,589/year/seat | $1,100/year/seat |
| 30+ seats | $1,366/year/seat | $900/year/seat |

\*Pricing is based on either iOS or a combination of two other OS with a charge for an add-on OS (which may include iOS). The numbers of seats listed above are not cumulative. Prices are listed in USD.

Any additional code-export on top of Silk for all bundles is an additional cost of US$1000/year/seat. Base product has the ability to export to one framework (JAVA, C#). If a user wants to export to additional interfaces, that will incur the additional $1000/seat/year fee. Product will not export to QTP.

All amounts are inclusive of all applicable taxes.

**Micro Focus Discount.** Micro Focus shall pay to Experitest the fees for each seat license of SilkMobile distributed to an End-User which shall be based on the prices set forth above minus the discount set forth below.

| Cumulative number of seat licenses sold | Discount |
|---|---|
| 1-40 | 40% |
| 41-80 | 42% |
| 81-100 | 45% |
| 100+ | 50% |

**EXHIBIT C**

1.      Micro Focus will provide all Level 1 Support, including initial telephonic and email support to its End-Users. If any customer issues cannot be addressed by Micro Focus under its Level 1 Support commitments, Experitest shall provide Level 2 Support to Micro Focus and/or the End-User. Level 2 Support may consist of accepting forwarded calls for support for the Application; providing guidance in installing the Application; isolating the reported problem; determining the nature and cause of the problem; and recreating the problem. Experitest shall provide assistance in the form of knowledge base (including but not limited to encyclopedic type knowledge regarding providing support for the Application, internet resources (including but not limited to news groups and FAQS), and email support. Experitest will have knowledgeable support engineers available by email from Sun-Thu 0700-1400 GMT to answer questions from Micro Focus and its End-Users. Such support shall include but not be limited to answering questions and providing (to the extent available) corrections and solutions to issues arising out of the installation, configuration and use of the Application.

2.      Experitest agrees to provide Level 3 Support to correct program errors in the Application reported by Micro Focus.

3.      Experitest shall provide Micro Focus with online access to Experitest's knowledge base and internal bug tracking systems to track bugs identified and reported by Micro Focus to Experitest.

4.      Experitest shall provide documentation and engineering support including named contact individuals within the Experitest development organization who will provide resolution for technical issues, customer problems, documentation and web requests, hot fixes, escalation, etc.

5.      Experitest shall initiate and provide monthly calls with Micro Focus Engineering Development to review issues related to Experitest's products and services including, but not limited to, Micro Focus recommendations to Experitest regarding updates, features, improvements, integrations, etc.

6.      Experitest shall provide timely email replies to Micro Focus inquiries, in accordance with the severity and service levels set forth below, and will provide a named escalation individual who will remedy replies that are outside of the service level:

Severity 1 (Critical): an incident that results in a critical business impact for a production system; may be assigned to an incident where a customer experiences (i) a complete or substantial loss of service when using a production system; (ii) real or perceived data loss or data corruption making an essential part of the production system unusable, or (iii) inability to use a mission critical application within a production system.

Severity 2 (High): an incident that results in some business impact; may be assigned to an incident where a customer experiences (i) the functionality of the software is adversely affected, but can be circumvented; (ii) certain functions within the Licensed Product are disabled, but the Licensed Product remains operable, or (iii) a complete or substantial loss of service when using a development system.

Severity 3 (Normal): an incident that results in a minimal business impact; may be assigned to an incident where a customer experiences no loss of service and the incident has no significant effect on the usability of the Licensed Product. This level is typically used for questions, comments and suggestions.

Experitest will respond to Micro Focus' support request according to the following service levels:

| Severity | Response Time | Initial Resolution Time | Final Resolution Time |
|---|---|---|---|
| 1 | 1 Business Hour | 8 Business Hours | Next product or service pack release |
| 2 | 4 Business Hours | 3 Business Days | Next product or service pack release |
| 3 | 1 Business Day | 20 Business Days | Future product or service pack release |

"Business Hour" means normal business hours at the Micro Focus support center responsible for the applicable End-User's location.

"Business Day" means Sunday through Thursday, excluding holidays and closures observed by the Micro Focus support center responsible for the applicable End-User's location.

"Response Time" means the time period within which Experitest will contact Micro Focus to acknowledge an incident report, commencing from the time that Experitest receives the incident report from Micro Focus.

"Initial Resolution Time" means the time period from Experitest's receipt of an incident report until Experitest provides a workaround or fix to resolve the problem, or for Severity 3 incidents, definitively identifies root cause and logs problem for fixing in a future release.

"Final Resolution Time" means the time by which Experitest will provide a permanent resolution to the problem, via a product or service pack release.

# Exhibit B

**Amendment No. 1 to**
**Software OEM/VAR Agreement**

This Amendment No. 1 ("Amendment") is made this 1st day of April, 2016 (the "Effective Date"), by and between Micro Focus (US), Inc. and Experitest Ltd., and hereby amends the Software OEM/VAR Agreement dated February 21, 2012 between the parties (the "Agreement"). All capitalized terms used herein and not otherwise defined shall have the meaning given them in the Agreement.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree to the following:

1) Section 1.1 is hereby restated in its entirety as follows:

"<u>Application</u>: The private labeled version of SeeTestMobile (now SeeTest Automation) and/or SeeTest Cloud for all Platforms for which it is made generally available by Experitest and bearing the Marks of Micro Focus and/or it affiliates as further described in Exhibit A to this Agreement, including any documentation attendant thereto, and any Updates and/or Successor Products thereto."

2) Section 1.11 is hereby restated in its entirety as follows:

"<u>SeeTestMobile or SeeTest Automation</u>. The most current generally available version of SeeTestMobile (now known as SeeTest Automation) for each Platform for which a version is generally available, including any Updates and/or Successor Products thereto."

3) The following is hereby added as Section 1.15:

"<u>SeeTest Cloud</u>. The most current generally available version of SeeTest Cloud for each Platform for which a version is generally available, including any Updates and/or Successor Products thereto."

4) Any reference to SeeTestMobile in the main body of the Agreement shall also be deemed to include SeeTest Cloud.

5) Section 10.1 is hereby restated in its entirety as follows:

"This Agreement shall remain in effect until December 31, 2018, unless terminated earlier in accordance with the provisions hereof. The parties may renew the term as mutually agreed in writing."

6) The following shall be added to the Agreement as Section 10.4.6:

"Notwithstanding the foregoing, in the event of a termination of the Agreement by Experitest pursuant to Section 10.3, Micro Focus shall continue to have the right to market and distribute the Application until December 31, 2018, as such rights exist prior to termination, solely to End-Users that exist as of the date of termination, subject to the

payment obligations set forth in Section 3. Micro Focus is permitted to maintain a limited license to use the Application and SeeTestMobile for the sole and exclusive purpose of fulfilling any contractual obligations for maintenance and support services of the Application to such End-Users that arise prior to December 31, 2018. Experitest's support and maintenance obligations under this Agreement with respect to such End-Users shall continue for at least twelve (12) months following December 31, 2018."

7) Exhibit A to the Agreement is hereby replaced by the Exhibit A attached hereto.

8) Exhibit B to the Agreement is hereby replaced by the Exhibit B attached hereto.

9) Micro Focus hereby agrees to maintain for the term of the Agreement a sole point of contact for license renewals that will provide Experitest with information about renewals upon request. Such initial point of contact is Michael Worthington at michael.worthington@microfocus.com, +44 2890 260011 (tel), +44 2890 260027 (fax).

Except to the extent expressly altered by this Amendment, all provisions of the Agreement shall remain in full force and effect in accordance with their respective terms.

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed as of the Effective Date.

**Experitest Ltd.**

Signature: _14, June 2016_

Name: _____

Title: _CEO_

_TAL BARMEIR_

**Micro Focus (US), Inc.**

Signature: _____

Name: **Courtney L. Wood**

Title: **North American Associate General Counsel**

<u>**EXHIBIT A**</u>

A. **Brief Project Description**

Project Title: SeeTest Automation rebranded to Silk Mobile & SeeTest Cloud rebranded to Silk Mobile Cloud

Experitest will rebrand all Product aspects of SeeTest Automation and SeeTest Cloud. Experitest will not be responsible for the product documentation rebranding. Micro Focus will rebrand the product documentation and help files.

B. **Responsibilities**

The responsibilities of Experitest shall include, but are not limited to:

1. Rebrand of SeeTest Automation & SeeTest Cloud (including naming conventions, product name, splash screen, application icons, EULA) into Silk Mobile and Silk Mobile Cloud respectively as new versions of these products are released by Experitest; and

2. Experitest shall incorporate any updates made to SeeTest Automation and SeeTest Cloud during the term of the Agreement into Silk Mobile and Silk Mobile Cloud promptly after such updates are made generally available and deliver to Micro Focus such updated version of Silk Mobile and Silk Mobile Cloud promptly thereafter

The responsibilities of Micro Focus shall include:

1. Provide marketing rebrand collateral support as reasonably needed.

2. Provide all graphics, templates, logos, brand names as needed.

3. Provide any Micro Focus software dependencies which are required for the rebrand.

4. Rebrand all product documentation, help files, collateral, and all associated marketing materials.

C. **Deliverables**

The key deliverables from Experitest will be the following:

1. Silk Mobile and Silk Mobile Cloud binaries, which will be an application packaged in either zip, self install, jar, or whatever Experitest uses

2. Unaltered SeeTest Automation and SeeTest Cloud binaries – 1 seat license – to be used for support comparisons and isolating root causes of issues

3. Release notes for Silk Mobile and Silk Mobile Cloud

4. Unaltered documentation and help files for SeeTest Automation and SeeTest Cloud for Micro Focus to rebrand.

D. **Payment** - No payment by Micro Focus is required for the foregoing

**Application (Silk Mobile) Pricing Structure**

| Product Name | License Type | Desktop OS | Mobile OS | Price [USD] Annual |
|---|---|---|---|---|
| Silk Mobile | 1 Seat License (Node Locked) | Windows/Mac | Android | 3500 |
| | | | iOS | 3500 |
| | | | Windows Phone | 3500 |
| | | | Blackberry | 3500 |
| | | | Windows Mobile | 3500 |
| | 1 Seat License (Node Locked) Bundle | Windows/Mac | 2 mobile OSs | 5000 |
| | | Windows/Mac | 3 mobile OSs | 7500 |
| Silk Mobile Executor | 1 Seat License (NodeLocked) | | Android | 1750 |
| | | | iOS | 1750 |
| | | | Windows Phone | 1750 |
| | | | NL Bundle Executor (2 OS's) | ~~2000~~2500 |
| Language Add-On | | | 1 language | 500 |
| Silk Mobile | 1 Floating License | Windows/Mac | Android | 7000 |
| | | | iOS | 7000 |
| | | | Windows Phone | 7000 |
| | | | Blackberry | 7000 |
| | | | Windows Mobile | 7000 |
| | 1 Floating License Bundle | Windows/mac | 2 mobile OSs | 10000 |
| | | | 3 mobile OSs | 15000 |
| Language Add-On | 1 Floating License | - | 1 language | 1000 |
| Network Virtualization | 1 per concurrent device | | | 1000 |
| Silk Mobile Cloud Add-On | 1 Seat (Node Locked) | | | 1000 |
| | 1 Floating License | | | 2000 |

*Fees:* For each of the above licenses sold to End Users. Micro Focus shall pay to Experitest 50% of the applicable price set forth above regardless of the amount charged to such End-Users for Application licenses. Such amount is inclusive of all applicable taxes.



# Exhibit C

 experitest

August 2, 2016

**To:**

**Micro Focus (US) Inc.**
Attn: Courtney L. Wood
700 King Farm Blvd.
Suite 400, Rockville, Maryland
USA 20850

Dear Ms. Wood,

## Re: <u>Software OEM/VAR Agreement</u>

Reference is made to the Software OEM/VAR Agreement entered into between Micro Focus (US) Inc. ("**Micro Focus**") and Experitest Ltd. ("**Experitest**") on February 21, 2012 (the "**Agreement**") and Addendum No. 1 to the Agreement which was entered into on April 1, 2016. All capitalized terms not defined in this letter will have the definitions as given in the Agreement.

On a number of occasions, during the past 12 months, Experitest has provided notice to Micro Focus regarding its failure to make timely payments in accordance with the Agreement.

Despite such requests, Micro Focus continues to breach its obligations to pay the Fees in accordance with Section 3.1 of the Agreement, and in failing to remedy such late payments, Micro Focus is in fundamental breach of the Agreement.

In light of the above, Experitest hereby informs you that the Agreement shall be terminated effective immediately from the date of delivery of this letter.

We clarify that the termination shall not derogate from Micro Focus's continuing obligations towards Experitest pursuant to Section 10.7 of the Agreement.


Yours sincerely,



Tal Barmeir, CEO

Experitest Ltd.